**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

_____

| | |
|---|---|
| **GILBERT ALAN LEMAY** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CAROLYN W. COLVIN,** | ) |
| **Acting Commissioner of Social Security** | ) |
| | ) |
| **Defendant.** | ) |

_____)

Civil Action No. WGC-15-1615

## <u>MEMORANDUM OPINION</u>

Plaintiff Gilbert Alan Lemay ("Mr. Lemay" or "Plaintiff") brought this action pursuant to

42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security

("Commissioner" or "Defendant") denying his claims for Disability Insurance Benefits ("DIB")

and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-

433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all

proceedings and final disposition.  *See* ECF Nos. 3, 7.[1]  Pending and ready for resolution are

Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No.

14) and Defendant's Motion for Summary Judgment (ECF No. 15).  No hearing is deemed

necessary.  *See* Local Rule 105.6 (D. Md. 2014).  For the reasons set forth below, Defendant's

Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment

or, in the Alternative, Motion for Remand will be denied.

---

[1]  The case was subsequently reassigned to the undersigned.

1. **Background**.

On January 19, 2012[2] Mr. Lemay protectively filed applications for DIB[3] and SSI alleging a disability onset date of July 15, 2011 due to mental illness (depression and bipolar disorder).  R. at 12, 73, 83, 200-07, 208-13.  Mr. Lemay's applications were initially denied on August 17, 2012.  R. at 119-22, 123-26.  On August 26, 2012 Mr. Lemay requested reconsideration.  R. at 118.  On January 14, 2013 the applications were denied again.  R. at 129-30.  On January 23, 2013 Mr. Lemay requested a hearing by an Administrative Law Judge ("ALJ").  R. at 131-32.  On May 8, 2014 an ALJ convened a hearing via video teleconference.  R. at 28-72.  Mr. Lemay was represented by counsel.  During the hearing the ALJ obtained testimony from Mr. Lemay and a vocational expert ("VE").  In the May 28, 2014 decision the ALJ found Mr. Lemay has not been under a disability as defined in the Social Security Act, from July 15, 2011 through the date of the decision.  R. at 22.  On June 4, 2014 Mr. Lemay requested a review of the hearing decision.  R. at 7.  On April 27, 2015 the Appeals Council denied Mr. Lemay's request for review, R. at 1-3, making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Mr. Lemay's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920 (2014).  Mr. Lemay bears the burden of demonstrating his disability as to the first four steps.  At step five the burden shifts to the Commissioner.  *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

---

[2] The applications for DIB and SSI are dated January 31, 2012.  *See* R. at 200, 208.

[3] "The claimant meets the insured status requirements of the Social Security Act through March 30, 2015."  R. at 13.  *See also* R. at 73, 105, 228, 268, 276.

At step one the ALJ found Mr. Lemay has not engaged in substantial gainful activity since July 15, 2011, the alleged onset date.  R. at 13.  The ALJ concluded at step two that Mr. Lemay has the following severe impairment: coronary artery disease.  *Id.*  Also at this step the ALJ considered Mr. Lemay's depression and anxiety, both singly and in combination.  Finding these impairments "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities[,]" the ALJ determined these mental impairments are non-severe.  R. at 14.  The ALJ elaborated on her finding.

> In making this finding, the undersigned has considered the medical evidence of record.  The claimant testified that his mental health declined following the tragic death of his wife in a February 2011 car accident in which he was the driver.  He received regular mental health treatment from July 2011 through January 2013.  He had a lapse in treatment from January 2013 to October 2013. Mental health treatment notes indicate that the claimant's condition is stable on medication and that his symptoms significantly improved.

*Id.* (citations omitted).

In accordance with 20 C.F.R. §§ 404.1520a, 416.920a the ALJ followed a special technique to evaluate the severity of Mr. Lemay's mental impairments.  The four broad functional areas—(1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation—are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1.  The ALJ determined Mr. Lemay has a *mild* limitation in his activities of daily living.  "The claimant testified that he is able to care for himself, cook meals, and do household chores such as laundry, vacuuming, sweeping, and mopping, albeit slowly."  R. at 14.  With regard to social functioning, the ALJ found Mr. Lemay has a *mild* limitation.  "The claimant testified that he enjoys being with []his family, and

he has a friend who visits from time to time.  He was recently able to take a trip to England.  He

has remarried." *Id.*

As for concentration, persistence, or pace, the ALJ determined Mr. Lemay has a *mild*

limitation.  "The claimant testified that he has difficulties with memory and concentration and

that he has to write reminder notes to himself.  However, he testified that he does not miss doctor

appointments.  His friend, Gail Clark, reported that the claimant is able to follow a recipe and

that he can follow spoken instructions with occasional reinstruction." *Id.* (citation omitted).

Fourth, the ALJ found Mr. Lemay has not experienced any episodes of decompensation. *Id.*

Because Mr. Lemay's bipolar disorder and depression do not cause more than "mild" limitation

in any of the first three functional areas and "no" episodes of decompensation in the fourth

functional area, Mr. Lemay's mental impairments are non-severe. *Id.*  The ALJ then proceeded

to consider the "paragraph C" criteria.

> In this case, the evidence fails to establish the presence of the
> "paragraph C" criteria.  There is no evidence that the claimant has
> had repeated episodes of decompensation, or that minimal
> increases in mental demands or a change in the environment would
> cause him to decompensate, or that he has the inability to function
> outside a highly supportive living arrangement.

R. at 15.  The ALJ also considered the "paragraph C" criteria for Listing 12.06 (*Anxiety Related*

*Disorders*) which are different from the "paragraph C" criteria for Listing 12.04 (*Affective*

*Disorders*).  The ALJ found no evidence establishing the presence of Listing 12.06 "paragraph

C" criteria "because there is no evidence that the claimant's anxiety disorder has resulted in his

complete inability to function independently outside the area of his home." *Id.*

Having completed the special technique for evaluating Mr. Lemay's mental impairments,

the ALJ proceeded to step three.  The ALJ determined Mr. Lemay does not have an impairment

or combination of impairments that meets or medically equals the severity of one of the listed

impairments.   The ALJ specifically considered Listing 4.04(C) (*Ischemic heart disease, Coronary artery disease*).

> While the evidence documents the claimant's diagnosis with coronary artery disease, neither the required angiographic evidence is present, nor an indication that the claimant experiences very serious limitations in his ability to independently initial, sustain, or complete activities of daily living.  He is able to perform personal care tasks, cook, and do some household chores.

R. at 15 (citation omitted).

Next, the ALJ proceeded to determine Mr. Lemay's residual functional capacity ("RFC").

The ALJ found Mr. Lemay has the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b) except,

> [the claimant] is limited to frequent crouching, crawling, and stooping, occasional ramp and stair climbing, and no climbing ladders, ropes, or scaffolds.   Additionally, he should avoid concentrated exposure to temperature extremes and odors, dusts, gases, and poor ventilation.

R. at 15.

At step four the ALJ found Mr. Lemay is capable of performing his past relevant work as a teacher's aide and a census field representative.   The VE provided testimony about Mr. Lemay's past relevant work.   The VE classified the teacher's aide position as light exertional level, semiskilled, with an SVP[4] of 3.   The census field representative position is at a light exertional level, unskilled, with an SVP of 2.  R. at 22, 67.  "In comparing the claimant's residual functional capacity with the physical and mental demands of this work and based upon the

---

[4] "The [Dictionary of Occupational Titles] lists a specific vocational preparation (SVP) time for each described occupation.  Using the skill level definitions in 20 CFR 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semiskilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT."  *Social Security Ruling (SSR) 00-4p,* 2000 WL 1898704 at, *3 (Dec. 4, 2000).

testimony[5] of the vocational expert, the undersigned finds the claimant is able to perform his past relevant work as a teacher's aide and census field representative as actually and generally performed."  R. at 22.  Accordingly, the ALJ concluded that Mr. Lemay has not been under a disability, as defined by the Act, from July 15, 2011 through the date of the decision.  *Id.*

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Mascio*, 780 F.3d at 634; *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d 987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct a verdict if the case were before a jury.  *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a decision supported by substantial evidence.  *Id.*

---

[5]

> Q:  Now, for the purpose of the – – so we have non-transferrable skills.  For the purpose of the hypothetical, this individual is age 58, the claimant's age at his alleged onset year. He has a high school and college education.  The work history that you just talked about.  And for the purpose of the hypothetical, we'll start with a light level of exertion.   The postural activities are frequent crouching, crawling, stooping.  But only occasional climbing ramps and stairs. And never climbing ladders, ropes, and scaffolds.   [INAUDIBLE] environmental area this individual would be limited – – but should avoid concentrated exposure to temperature extremes and odors, dusts, gases, poor ventilation.  With this hypothetical, in your opinion could such a person do any of the past work?
> A:  Yes.
> Q:  Tell me about that.
> A:  The position of teacher's aide, that still fits within the parameter of this first hypothetical.  The field rep, Census.

R. at 68-69.

4. **Discussion.**

Plaintiff claims the ALJ erred in three respects:  (a) failure to recognize Mr. Lemay's mental disorders as severe impairments, (b) failure to accord proper weight to the opinion of Mr. Lemay's treating cardiologist, and (c) exclusion of Mr. Lemay's mental limitations from the hypothetical question presented to the VE.  These issues are addressed below.

A.       *Severity of Mr. Lemay's Mental Impairments*

Plaintiff contends the ALJ erred at step two by finding Mr. Lemay's depression and anxiety non-severe.   Plaintiff asserts the medical evidence clearly establishes Mr. Lemay's mental impairments meet the low threshold of severe impairments at step two.  The undersigned has summarized the ALJ's determination concerning Mr. Lemay's mental impairments *supra*.

Mr. Lemay's treating psychiatrist, Jay S. Harkhani, M.D., completed a *Mental Capacity Assessment* form on November 21, 2012.  R. at 556-58.  Dr. Harkhani began treating Mr. Lemay on September 24, 2012.  R. at 552-55, 558.  As reflected on the *Mental Capacity Assessment* form Dr. Harkhani opined Mr. Lemay has *moderate*[6] limitations in (a) the ability to carry out detailed instructions, (b) the ability to maintain attention and concentration for extended periods, (c) the ability to perform at a consistent pace with a one hour lunch break and two 15 minute rest periods, (d) the ability to interact appropriately with the general public, and (e) the ability to accept instructions and respond appropriately to criticism from supervisors.   R. at 556-57.  Additionally, Dr. Harkhani opined Mr. Lemay has *marked*[7] limitations in (a) the ability to complete a normal workday without interruptions from psychologically based symptoms and (b) the ability to complete a normal workweek without interruptions from psychologically based symptoms. R. at 556.

---

[6] "MODERATE: The individual is unable to function in this area, one third of an eight hour work day."  R. at 556.

[7] "MARKED:  The individual is unable to function in this area, two thirds of an eight hour work day."  *Id.*

A review of Dr. Harkhani's evaluation and progress notes appears inconsistent with the opinion expressed on the *Mental Capacity Assessment* form.

| Date | Mental Status | Diagnosis |
|---|---|---|
| 9/24/12 | Mood is entirely normal with no signs of depression or mood elevation.   Affect is appropriate, full range, and congruent with mood.     There are no signs of hallucinations, delusions, bizarre behaviors, or other indicators of psychotic process . . . Cognitive functioning and fund of knowledge is intact and age appropriate . . . Social judgment is intact.   There are signs of anxiety. There are no signs of hyperactive or attentional difficulties. R. at 554. | Bipolar 1, Most Recent Episode Manic, in Full Remission (Active); Alcohol Abuse (Active); Opioid Abuse (Inactive) |
| 10/22/12 | Mood is euthymic with no signs of depression or elevation . . .There are no signs of psychotic process . . .There are no signs of a thought disorder . . . Cognitive functioning, based on vocabulary and fund of knowledge, is commensurate with his age and abilities . . . No signs of anxiety are present.   There are no signs of hyperactive or attentional difficulties. R. at 549, 550. | *Id.* |
| 11/19/12 | Demeanor is sad.   His affect is constricted . . . Cognitive functioning and fund of knowledge is intact and age appropriate . . . The patient is fully oriented . . . Social judgment is intact.   There are signs of anxiety.   There are no signs of hyperactive or attentional difficulties.   R. at 546, 547. | *Id.* |
| 1/21/13 | Mr. Lemay's mood is euthymic with no signs of depression or manic process . . . Cognitive functioning, based on vocabulary and fund of knowledge, is intact and age appropriate and he is fully oriented.   There are no signs of anxiety apparent.   He exhibits no signs of attentional or hyperactive difficulties. R. at 544. | *Id.* |
| 10/21/13 | Mr. Lemay's mood is euthymic with no signs of depression or manic process . . . Cognitive functioning, based on vocabulary and fund of knowledge, is intact and age appropriate and he is fully oriented.   There are no signs of anxiety apparent.   He exhibits no signs of attentional or hyperactive difficulties. R. at 540, 541. | *Id.* |
| 11/20/13 | Mood is euthymic with no signs of depression or elevation . . . There are no signs of a thought disorder . . . Cognitive functioning, based on vocabulary and fund of knowledge, is commensurate with his age and abilities.   Orientation, memory and general cognitive abilities present as normal and intact.   No signs of anxiety are present.   There are no signs of hyperactive or attentional difficulties. R. at 537. | *Id.* |

| 2/4/14 | Examination of Mr. Lemay reveals no serious mental status abnormalities.  He exhibits neither depression nor mood elevation . . . There are no signs of cognitive difficulty, based on vocabulary and fund of knowledge. Memory is intact for recent and remote events and he is oriented to time and place.  There are no signs of anxiety. A normal attention span is in evidence and there are no signs of hyperactivity. R. at 534-35. | *Id.* |

After Dr. Harkhani's initial evaluation of September 24, 2012, every subsequent progress note reflected that Mr. Lemay's behavior has been stable and uneventful or unremarkable, medication compliance is good, and Mr. Lemay reported no side effects and none are in evidence.  *See* R. at 534, 537, 540, 543, 546, 549.  Mr. Lemay showed a partial treatment response to prescribed medication as noted on November 19, 2012.  R. at 546.  During the January 21, 2013 appointment Mr. Lemay reported improvement and stated he has done well the previous two months.  R. at 543.  Mr. Lemay did not see Dr. Harkhani for an eight month period. He continued to take Lamictal during this period.  Although Mr. Lemay reported being anxious, sad and depressed after a recent bypass surgery, he informed Dr. Harkhani that sleep has been good and the absence of any manic symptoms.  R. at 540.  During his last two sessions with Dr. Harkhani, Mr. Lemay reported improvement.  R. at 534, 537.  The ALJ appropriately assigned "little weight" to Dr. Harkhani's opinion as reflected on the *Mental Capacity Assessment* form "because it is contradicted by the treatment notes, which document that the claimant's symptoms are improved and that he is stable on medication."  R. at 20 (citations omitted).

Mr. Lemay obtained medical assistance for his mental impairments before seeing Dr. Harkhani, starting in July of 2011.  Mr. Lemay initially sought treatment from Khalid Ahmed, M.D., a psychiatrist.  Dr. Ahmed assessed Mr. Lemay with a Global Assessment of Functioning ("GAF") score of 51 in August 2011 and 50 in October 2011.  R. at 300-01.  The ALJ assigned great weight to Dr. Ahmed's opinions.

> A GAF of 50 reflects serious symptomology and a GAF of 51 reflects moderate symptomology. These opinions were made at the beginning of the claimant's treatment, when he was mourning the loss of his wife, and are consistent with treatment records. However, the undersigned notes that the claimant's symptoms greatly improved with treatment shortly after these opinions were given.

R. at 20 (citations omitted).

Furthermore, during a May 24, 2012 session with the Mental Health Clinic of a Veterans Affairs ("VA") Medical Center, Mr. Lemay disclosed an outside or non-military psychiatrist prescribed several drugs for his bipolar disorder including Lamictal, Buspar, Trazadone and Ativan. "Veteran said he is doing much better since taking the meds and does not feel down or sad." R. at 324. Also during a March 27, 2014 session at a VA Mental Health Clinic, Mr. Lemay reported his mood being fairly stable while taking prescribed medications. R. at 568. In summary, the "[m]ental health treatment notes indicate that the claimant's condition is stable on medication and that his symptoms significantly improved." R. at 18 (citations omitted). The undersigned finds no error as alleged by Plaintiff.

**B.**   *Failure to Accord Proper Weight to Treating Physician's Opinion*

Steven Hearne, M.D. is Mr. Lemay's treating cardiologist. Dr. Hearne began treating Mr. Lemay on June 15, 2011. R. at 288-89. Over two years later, on October 11, 2013, Dr. Hearne completed a *Cardiac Medical Source Statement* form. R. at 559-62. Mr. Lemay has coronary artery disease. Dr. Hearne opined Mr. Lemay's prognosis is life long, ICD[8] implant. R. at 559. Dr. Hearne checked the following as Mr. Lemay's signs and symptoms:

- Chest pain
- Weakness

---

[8] "An Implantable cardioverter-defibrillator (ICD) is a device that detects any life-threatening, rapid heartbeat. This abnormal heartbeat is called an arrhythmia. If it occurs, the ICD quickly sends an electrical shock to the heart to charge the rhythm back to normal. This is called defibrillation." Medline Plus, https://www.nlm.nih.gov/medlineplus/ency/article/007370.htm (last visited May 13, 2016).

- Arrhythmia
- External dyspnea
- Syncope
- Anginal equivalent pain
- Exercise intolerance
- Chronic fatigue
- Palpitations

*Id.*  The *Cardiac Medical Source Statement* form inquired, if your patient has angina, describe the nature, location and radiation of symptoms.  Dr. Hearne wrote, "chest pain and shortness of breath."  The form then asked, how often do angina episodes typically occur?  Dr. Hearne wrote, "often, daily."  Dr. Hearne, in response to another questions about angina, opined Mr. Lemay must rest "1-2 hours" after an episode of angina.  *Id.*

In completing page two of the *Cardiac Medical Source Statement* form, Dr. Hearne opined Mr. Lemay is incapable of tolerating even low stress work, can stand/walk less than 2 hours, can sit at least 6 hours, needs a job which permits Mr. Lemay to shift positions at will from sitting, standing or walking, and that Mr. Lemay would need to take 1 to 2 unscheduled breaks, 5 to 10 minutes in duration, per day.  R. at 560.

Dr. Hearne opined Mr. Lemay can rarely lift and carry less than 10 pounds in a competitive work situation.  Dr. Hearne further opined Mr. Lemay can never lift and carry 10 pounds, 20 pounds and 50 pounds.  In addressing other subjects on the third page of the *Cardiac Medical Source Statement* form, Dr. Hearne asserted Mr. Lemay can occasionally twist, stoop (bend) and crouch/squat; Mr. Lemay can rarely climb stairs and Mr. Lemay can never climb ladders.  With regard to environmental restrictions, Dr. Hearne declared Mr. Lemay had no restrictions as to extreme cold, wetness or cigarette smoke.  Mr. Lemay must however avoid concentrated exposure to extreme heat, high humidity, perfumes, soldering fluxes, solvent/cleaners, fumes, odors, gases, dust and chemicals.  R. at 561.

On the final page of the *Cardiac Medical Source Statement* form, Dr. Hearne opined Mr. Lemay would likely be "off task" 10 percent on a typical workday due to the severity of his coronary artery disease interfering with Mr. Lemay's attention and concentration needed to perform even simple work.  Dr. Hearne further declared Mr. Lemay's impairment would produce "good days" and "bad days."  Mr. Lemay's impairment would cause him to be absent from work about one day per month.  Finally, Dr. Hearne wrote Mr. Lemay has cardiomyopathy and will be treated with an ICD placement.  R. at 562.

The ALJ considered this opinion of Dr. Hearne and "afford[ed] little weight to this opinion, which is contradicted by the cardiology treatment notes, which fail to document that the claimant is as limited as Dr. Hearne opines and note improvements in the claimant's condition."  R. at 20 (citations omitted).   Plaintiff argues the ALJ's reasoning is legally insufficient.  Specifically Plaintiff claims, "it is insufficient for the ALJ to merely conclude that the 'medical evidence' fails to support a treating physician's opinions.  Specific reasoning 'supported by the evidence in the case record' must be given by the ALJ in explaining the weight given to a treating physician's opinion."  ECF No. 14-1 at 8 (citation omitted).

According to the Social Security Regulations, generally more weight is given to the opinions from treating sources "since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2).  A treating source's opinion however is not automatically entitled to *controlling weight*.  To be accorded this weight, the treating source's opinion concerning the nature and severity of a claimant's

impairment must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and must not be "inconsistent with the other substantial evidence in [a claimant's] case record. . . ." *Id.* If a treating source's opinion is not entitled to controlling weight, the ALJ must consider (a) the length of the treatment relationship and the frequency of the examination, (b) the nature and extent of the treatment relationship, (c) supportability, (d) consistency, (e) specialization and (f) other factors in determining what weight to assign to the treating source's opinion. *See id.* §§ 404.1527(c)(2)(i) – (c)(6), 416.927(c)(2)(i) – (c)(6).

A review of the office visit records generated by Dr. Hearne's practice explains why the ALJ accorded little weight to the October 2013 opinion expressed via the *Cardiac Medical Source Statement* form. For instance, Dr. Hearne checked *syncope*[9] as one of the signs or symptoms Mr. Lemay has exhibited due to his coronary artery disease. However, *every* office note found Mr. Lemay "negative" for syncope. *See* R. at 288, 289, 304, 305, 347, 349, 350, 418, 422, 424, 425, 432, 433, 437, 440, 441, 443, 444, 448, 451, 454, 455, 579, 580. Second, Dr. Hearne documented Mr. Lemay having palpitations one occasion. S*ee* R. at 346 (September 13, 2012). The remaining office visits record an absence of palpitations. *See* R. at 288, 289, 304, 305, 349, 350, 418, 422, 424, 425, 432, 433, 436, 437, 440, 441, 443, 444, 451, 454, 455, 579, 580. Third, Dr. Hearne also reported chest pain, external dyspnea[10] and anginal equivalent[11] pain

---

[9] "Syncope simply means fainting or the sudden loss of consciousness." Cohen, M.D., Lawrence S., *Chapter 9: Heart Disease Symptoms*, p. 111, Yale University School of Medicine Heart Book, http://doc.med.yale.edu/heartbk (last visited May 13, 2016).

[10] "*Dyspnea* refers to the sensation of difficult or uncomfortable breathing. It is a subjective experience perceived and reported by an affected patient. Dyspnea on exertion (DOE) may occur normally, but is considered indicative of disease when it occurs at a level of activity that is usually well tolerated." NCBI Bookshelf. Chapter 11 Dyspnea, Orthopnea and Paroxysmal Nocturnal Dyspnea. http://www.ncbi.nlm.nih.gov/books/NBK213 (last visited May 12, 2016).

[11] "Often, individuals with [ischemic heart disease] will complain of shortness of breath (dyspnea) on exertion without chest pain or discomfort. In a minority of such situations, the shortness of breath is due to myocardial ischemia; this is called *anginal equivalent*. To represent anginal equivalent, your shortness of breath should have precipitating and relieving factors similar to those of typical chest discomfort, and we must have objective medical

as other signs and symptoms of Mr. Lemay's coronary artery disease.  Mr. Lemay reported chest pain during visits on June 11, 2011 and April 12, 2013.  *See* R. at 288, 289, 450, 451.

Prior to Dr. Hearne's October 2013 opinion, Mr. Lemay reported shortness of breath during the May 13, 2013 visit, R. at 443, 444, and the September 20, 2013 visit,  R. at 440 ("He continues to have SOB, however, this is not on a regular basis.").  Dr. Hearne reported anginal symptoms or angina on one visit, April 12, 2013, R. at 451-52, and a subsequent admission to the hospital on April 16, 2013, R. at 448.  Since Dr. Hearne identified Mr. Lemay as having angina on the *Cardiac Medical Source Statement* form, Dr. Hearne listed chest pain and shortness of breath as symptoms of Mr. Lemay's angina.  Dr. Hearne stated Mr. Lemay experienced these symptoms "often, daily."  Dr. Hearne's *own* treatment notes do not support this characterization.  Further, Dr. Hearne's October 2013 opinion noted Mr. Lemay experiences chronic fatigue.  This condition was noted infrequently.  *See* R. at 416[12], 420, 447[13], 450.

Dr. Hearne opined about Mr. Lemay's extreme limitation in lifting and carrying.  However less than a month after Mr. Lemay's left heart catheterization with percutaneous coronary intervention on April 16, 2013, Dr. Hearne recorded on May 13, 2013, "Patient is doing too much heavy activity such as moving cinder blocks and a wheelbarrow.  He is also been building a barn loft.  I've explained to him with the degree of cardiomyopathy that he has it is dangerous to do heavy activity."  R. at 443.  During this same visit Dr. Hearne also recorded Mr.

---

evidence of myocardial ischemia; for example, ECG or ETT evidence or appropriate medically acceptable imaging. In these situations, it is essential to establish objective evidence of myocardial ischemia to ensure that you do not have effort dyspnea due to non-ischemia or non-cardiac causes."  20 C.F.R. § 404, Subpt. P, App. 2, Sec. 4.00(E)(5) (2014).

[12] This "History of Present Illness" copies verbatim the "History of Present Illness" recorded on December 10, 2013. R. at 420.

[13] This "History of Present Illness" copies verbatim the "History of Present Illness" recorded on April 12, 2013.  R. at 450.

Lemay continues to smoke (he had quit earlier as recommended) and Mr. Lemay's failure to start taking Lipitor, an atorvastatin medication prescribed. *Id.* Subsequent to October 2013, Mr. Lemay traveled to London for a week's vacation. *See* R. at 420.

The medical records also document the benefits of medication. For instance, on February 13, 2013 Dr. Hearne wrote, "[Mr. Lemay] had some chest pain with radiation into the arm, however, this resolved with taking nitroglycerin . . . He otherwise has been feeling very well. He denies any chest pain, pressure, tightness or SOB." R. at 454.

After the ICD was implanted, Mr. Lemay was seen by Dr. Hearne's office on October 21, 2013. "[Mr. Lemay] is doing well. He is eager to resume previous functions including sexual relations. [H]e states he is free of cardiac complaints and has not required use of any nitroglycerine recently." R. at 428. This same office note recorded that Mr. Lemay has resumed smoking and is taking his statin (atorvastatin) inconsistently. *Id.*

One of the most recent medical assessments occurred on March 24, 2014 at a VA clinic. Mr. Lemay's ischemic cardiomyopathy, since the implantation of the ICD, revealed no congestive heart failure manifestations and an ejection fraction[14] ("EF") of 35% or less. R. at 565. This assessment was apparently derived from the February 6, 2014 office visit with Dr. Hearne's practice. *See* R. at 581. The EF had improved. At the time of Mr. Lemay's left heart catheterization with percutaneous coronary intervention on April 16, 2013, the ejection fraction was estimated at 20%. R. at 478. The July 16, 2013 Cardia MUGA Scan determined the ejection fraction to be 24%. R. at 476.

---

[14]  "The percentage of blood that is pumped out of a filled ventricle as a result of a heartbeat. The heart does not eject all the blood in the ventricle. Only about two-thirds of the blood is normally pumped out with each beat, and that fraction is referred to as the ejection fraction. The ejection fraction is an indicator of the heart's health. If the heart is diseased from a heart attack or another heart condition, the ejection fraction may decrease." *MedicineNet.com* (http://www.medicinenet.com) (last visited May 16, 2016).

The ALJ summarized Dr. Hearne's treatment notes, R. at 17, 19, and other medical evidence documenting Mr. Lemay's cardiac symptoms, R. at 18.  Substantial evidence supports the ALJ assigning "little weight" to Dr. Hearne's October 11, 2013 opinion.

C.      *Improper Hypothetical Question to the VE*

Plaintiff contends the ALJ's hypothetical question to the VE was legally insufficient because the ALJ omitted any reference to Mr. Lemay's mental limitations.  The undersigned finds no error because the ALJ found Mr. Lemay's mental impairments non-severe at step two. By definition a non-severe impairment means an impairment that does not significantly limit a claimant's mental ability to do basic work activities.  20 C.F.R. §§ 404.1521(a), 416.921(a).  The hypothetical question was based on Mr. Lemay's RFC which did not include any limitation attributable to any mental impairment.  *See Gerbrick v. Comm'r of Soc. Sec. Admin.*, No. SAG-13-1881, 2014 WL 4826158, at *2 (D. Md. Sept. 22, 2014) (ALJ "need only pose [hypothetical questions] that are based on substantial evidence and accurately reflect a claimant's limitations").

5. **Conclusion.**

Substantial evidence supports the decision that Mr. Lemay is not disabled.  Accordingly, Defendant's Motion for Summary Judgment will be granted and Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand will be denied.

Date:  May 27, 2016                        _____/s/_____
                                                          WILLIAM CONNELLY
                                                          UNITED STATES MAGISTRATE JUDGE